UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN EDWARD ADAMS,<br><br>Petitioner,<br><br>v.<br><br>SCOTT FRAUENHEIM,<br><br>Respondent. | Case No. 17-cv-01289-EMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Alan Edward Adams, a prisoner currently incarcerated at Pleasant Valley State Prison, filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer to the petition. Mr. Adams' petition is now before the court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus will be denied.

## I. BACKGROUND

Following entry of a guilty plea, Mr. Adams was convicted in 1993 in the Sonoma County Superior Court of numerous crimes, including conspiracy to commit murder and two counts of first degree murder with special circumstances. *See* Docket No. 1 at 12; Docket No. 2 at 29-32. He was sentenced to life in prison without the possibility of parole ("LWOP"). In exchange for the guilty plea, the prosecution agreed not to seek the death penalty and agreed to the LWOP sentence. *See* Docket No. 2 at 138.

Mr. Adams states that the crimes of which he was convicted were alleged to have occurred after he reached his eighteenth birthday, with the most serious offenses occurring in the time period from May 29 until June 5, 1991, when "he was 18 years, five months old." Docket No. 1 at 12. Adams provides virtually no information about the crimes, but some of the details can be learned from the 25-count felony complaint and his abstract of judgment. As to the conspiracy to

1 commit murder, the felony complaint alleged eight overt acts occurring in the two months before the double murder and apparently having as their objective the murder of a different person. *See* Docket No. 18-3 at 49-51. As to the two murders, the felony complaint alleged the special circumstances that (a) the murders were committed during the crimes of robbery and first degree burglary, and (b) multiple murders were committed. *Id.* at 46-47. In addition to the convictions for the two murders and conspiracy to commit murder, Mr. Adams was convicted of five counts of possessing, exploding and igniting an explosive device; seven counts of shooting at an inhabited dwelling; four or five counts of burglary; and two counts of robbery. Docket No. 18-3 at 56-59.

Mr. Adams' federal petition for writ of habeas corpus concerns his sentence, and the way in which two recent statutory changes pertaining to youthful offenders might impact that sentence. He contends that (1) his Fourteenth Amendment right to equal protection of the laws was violated because California's sentencing reform provisions treat young-adult offenders who received LWOP sentences differently than young-adult offenders who received sentences of less than LWOP; and (2) his mandatory LWOP sentence violated his Eighth Amendment right to be free of cruel and unusual punishment because he committed the murders at an age at which he had a "juvenile mindset."

The court issued an order to show cause why the petition should not be granted. Respondent filed an answer, arguing that habeas jurisdiction is absent for the claims Mr. Adams asserts and that the claims fail on the merits. Mr. Adams did not file a traverse.

Before Mr. Adams filed his federal habeas petition, he filed unsuccessful petitions for writ of habeas corpus in the state courts raising the same claims. The Sonoma County Superior Court denied Mr. Adams' petition for writ of habeas corpus in a short, but reasoned, order on April 14, 2016. Docket No. 2 at 138-39. The California Court of Appeal and the California Supreme Court summarily denied Mr. Adams' petitions for writ of habeas corpus raising the same claims that had been rejected by the superior court. *See* Docket No. 2 at 142, 164.

## II.     STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

2

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

3

**III. DISCUSSION**

A. Federal Habeas Jurisdiction Exists For Mr. Adams' Claims

Respondent argues that habeas jurisdiction is absent for the claims asserted by Mr. Adams. The Court disagrees.

In *Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016) (en banc), the Ninth Circuit held that that a prisoner's claim which, if successful, will not necessarily lead to immediate or speedier release from custody falls outside the "core of habeas corpus" and must be pursued (if at all) in a civil rights action under 42 U.S.C. § 1983, rather than in a habeas action. *Nettles*, 830 F.3d at 927-28;[1] *see also Borstad v. Hartley*, 668 F. App'x 696, 697 (9th Cir. 2016) (citing *Nettles*, 830 F.3d at 935-37) (success on petitioners' claims that the lengthening of intervals between parole hearings caused by Marsy's Law violated their rights under Ex Post Facto Clause "would not necessarily result in a shortening of their sentences. Thus, the district court in each case lacked jurisdiction to grant 28 U.S.C. § 2254 habeas relief."). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam).

Here, Mr. Adams' petition urges that he is entitled to consideration under the resentencing and parole-consideration provisions in California Penal Code §§ 1170(d)(2) and 3051. In a sense, the petition seeking the benefit of a proceeding that might enable the petitioner to obtain an earlier release could fall under *Nettles* which would require the action be brought under § 1983 because it would merely open up the possibility of earlier release, and would not require it.[2] But the petition

---

[1] In *Nettles*, the life inmate challenged a prison disciplinary decision, which he contended was impeding his ability to be granted parole. The Ninth Circuit concluded that habeas jurisdiction was absent due to the fact that success on the merits "would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole." *Nettles*, 830 F.3d at 934-35. Under state law, the inmate had to be found suitable for parole before he would be granted parole; "the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole." *Id.* at 935.

[2] If Mr. Adams prevails on his claim that California Penal Code § 1170(d)(2) should apply to him,

4

does not challenge a condition of confinement nor does it arise from an incident during post-sentence confinement. Rather, it challenges the constitutionality of the sentence itself; the petition alleges that Mr. Adams was sentenced to LWOP "in derogation of the Eighth Amendment . . . for all the reasons stated in *Miller v. Alabama*," 567 U.S. 460 (2012). *See* Docket No. 1 at 21. The petition's equal protection claim could also be understood as a challenge to the continued lawfulness of the LWOP sentence itself. As the petition "attack[s] the legality of the . . . sentence," *Nettles*, 830 F.3d at 933, it falls within the "core of habeas," *id.* at 928. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (internal citation omitted). The petition herein need not be refiled as a § 1983 civil rights action. Indeed, if the Court found that Mr. Adams' sentence itself was unconstitutional, the relief granted would be to release him from custody unless he was resentenced to a constitutional sentence – and that is the kind of relief that typically would be granted in a habeas action rather than in a civil rights action. *See generally Thomas v. Arnold*, 2018 WL 279975, *3 (S.D. Cal. 2018) (*Nettles* did not bar habeas action in which petitioner seeking relief under California Penal Code § 3051 "request[ed] re-sentencing, and in the alternative, access to a parole hearing"). The Court concludes that habeas jurisdiction

---

he would be entitled to submit a "petition for recall and resentencing" to the sentencing court. Cal. Penal Code § 1170(d)(2). But that does not necessarily mean that he would be resentenced to less than life without parole and therefore does not necessarily mean that he would be released from custody immediately or any time sooner than would otherwise occur under his current sentence. Similarly, if Mr. Adams prevails on his claim that California Penal Code § 3051(b) should be applied in a way as to allow parole consideration for him notwithstanding his LWOP sentence, it does not necessarily mean that he would be released from custody immediately or any time sooner than would otherwise occur under his current sentence. Under any parole consideration proceedings, the inmate must be found suitable for parole before he will be released on parole. *See* Cal. Penal Code § 3051(d) ("At the youth offender parole hearing, the board shall release the individual on parole as provided in Section 3041. . . ."); *see also id.* at § 3041(b)(1) (at parole hearing, parole shall be granted unless panel "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual"); Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."). Nonetheless, there is a substantial qualitative difference between a life sentence and an LWOP sentence.

5

exists for Mr. Adams' petition.

B. <u>California's Efforts to Address Youthful and Young Adult Offenders</u>

Mr. Adams' petition for writ of habeas corpus is based on two sentencing provisions enacted in California in 2015 to address youthful offenders in the wake of the U.S. Supreme Court's decisions regarding youthful offenders, including *Miller*, 567 U.S. at 465, which held that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment."

The first provision at issue is California Penal Code § 1170(d)(2). That statute provides, in relevant part: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." Cal. Penal Code § 1170(d)(2)(A)(i). Mr. Adams does not qualify for relief on the face of § 1170(d)(2) because he was not under 18 years of age at the time he committed the murders.

The second provision at issue is California Penal Code § 3051. That statute provides, in relevant part:

> (b)(1) A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a *determinate sentence* shall be eligible for release on parole at a youth offender parole hearing by the board during his or her 15th year of incarceration, unless previously released pursuant to other statutory provisions.
>
> (2) A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of *less than 25 years to life* shall be eligible for release on parole by the board during his or her 20th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.
>
> (3) A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of *25 years to life* shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.
>
> (4) A person who was convicted of a controlling offense that was committed *before the person had attained 18 years of age* and for

> which the sentence *is life without the possibility of parole* shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.

Cal. Penal Code § 3051(b) (emphasis added).[3] The statute also provides that it "shall not apply . . . to cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." Cal. Penal Code § 3051(h).

Mr. Adams does not qualify for relief on the face of § 3051(b)(1-3) because he was sentenced to LWOP, and he does not qualify for relief on the face of § 3051(b)(4) because he was both over 18 at the time of the murders and was sentenced to LWOP.

C.  State Court Decision

The last reasoned decision from a state court in this case is the very short decision from the Sonoma County Superior Court which explained that Mr. Adams was not entitled to relief under California Penal Code §§ 1170(d)(2) and 3051 because of his age at the time he committed the murders and because he was serving an LWOP sentence. The court stated: "This court does not find that Penal Code § 1170(d)(2) and Penal Code § 3051 violates either the Equal Protection Clause nor is it cruel punishment. The legislation was enacted in response to U.S. Supreme and California Supreme Court decisions distinguishing those who committed crimes when under eighteen (18) years of age and those who were eighteen (18) years old and older and embodies those principles set forth in those decisions." Docket No. 2 at 139.

As the last reasoned decision from a state court, the Sonoma County Superior Court's decision is the decision to which § 2254(d) is applied. *See Ylst*, 501 U.S. at 803-04. Mr. Adams is entitled to habeas relief only if the superior court's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an

---

[3] When § 3051 was amended in 2015, relief was made available for a person who had committed a crime when he or she was 23 years of age or younger. The section was amended again in 2017 to raise the age limit to 25 years of age or younger. *See* Cal. Penal Code § 3051 (Added by Stats.2013, c. 312 (S.B.260), § 4. Amended by Stats.2015, c. 471 (S.B.261), § 1, eff. Jan. 1, 2016; Stats.2017, c. 675 (A.B.1308), § 1, eff. Jan. 1, 2018; Stats.2017, c. 684 (S.B.394), § 1.5, eff. Jan. 1, 2018.)

unreasonable determination of the facts in light of the evidence presented.

D. <u>Equal Protection Challenge</u>

The Fourteenth Amendment's Equal Protection Clause provides that no state shall deny to any person "the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause ensures that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Constitution does not, however, require things that are different to be treated the same. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Id.*

When state action "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution," that action must be analyzed under strict judicial scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973). When neither a suspect class nor a fundamental right is implicated, the appropriate standard of analysis is rational basis review, which requires only that disparate treatment be "rationally related to legitimate government interests." *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981). The rational basis standard presents a significant obstacle to an equal protection claim, as "legislative solutions must be respected if the 'distinctions drawn have some basis in practical experience.'" *McGinnis v. Royster*, 410 U.S. 263, 276 (1973) (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 331 (1966)).

The starting point is to determine the appropriate level of review for this case. Although Mr. Adams (like other young adults sentenced to LWOP) was treated differently from young adults receiving less serious sentences, that distinction does not constitute discrimination against a suspect class. *See Frontiero v. Richardson*, 411 U.S. 677, 682 (1973) (describing classifications based on sex, race, alienage, and national origin as "inherently suspect"). And, although liberty is affected when a defendant is sentenced following a conviction, that fact does not mean that

8

different sentences impinge on a fundamental right. *See generally United States v. Ellsworth*, 456 F.3d 1146, 1150 (9th Cir. 2006) (rational basis standard applies to equal protection challenges to the Sentencing Guidelines based on a comparison of allegedly disparate sentences); *United States v. Harding*, 971 F.2d 410, 412 (9th Cir. 1992) (a longer sentence for an offense involving crack cocaine rather than powder cocaine does not implicate a fundamental or quasi fundamental right). Because Mr. Adams is neither a member of a suspect class nor being denied a fundamental right, rational basis review properly applies to his equal protection claim and requires that the different treatment be rationally related to a legitimate state interest.

The California Penal Code includes specified punishments for numerous crimes, reflecting that the California Legislature has established a hierarchy of punishments for crimes based on the facts and circumstances of the crimes. For example, a killing can result in several different sentences, such as 3, 6, or 11 years' imprisonment for voluntary manslaughter; 15-years-to-life imprisonment for second degree murder; and 25-years-to-life imprisonment for a first degree murder. *See* Cal. Penal Code §§ 190, 192. The California Legislature has determined that LWOP sentences are appropriate for particularly severe crimes in California, including murders with certain facts or circumstances. *See, e.g.,* Cal. Penal Code § 190.2 (first degree murder with special circumstances (such as multiple murders and murders during the commission of a first degree burglary or robbery), the alternative penalty for which is the death penalty); *id.* at § 190(c) (murder of a peace officer) *id.* at § 190.03 (hate-crime first degree murder); *id.* at § 190.05(a) (murder by a person who has served a prison term for a prior murder). (LWOP sentences also are available for some non-homicides. *See* Cal. Penal Code § 209(a) (kidnapping for ransom resulting in death or great bodily injury); *id.* at § 667.61(j, l) (certain sex offenses with aggravating factors); *id.* at § 4500 (assault with a deadly weapon by a prisoner serving a life sentence).) The LWOP sentence provisions reflect the California Legislature's conclusion that persons who commit these most severe crimes are subject to harsher sentences than others.

In particular, Mr. Adams has not shown that imposing an LWOP sentence for a special-circumstance murder is not rationally related to protecting the people of California from particularly dangerous criminals. "It is the prerogative of the Legislature . . . to recognize degrees

of culpability and penalize accordingly." *People v. Jacobs*, 157 Cal. App. 3d 797, 804 (Cal. Ct. App. 1984); *see Oyler v. Boles*, 368 U.S. 448, 451 (1962) ("Petitioners recognize that the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge."); *Jacobs*, 157 Cal. App. 3d at 803-04 (equal protection principles do not require people convicted of different crimes to receive the same sentence); *People v. DeSimone*, 62 Cal. App. 4th 693, 701-02 (Cal. Ct. App. 1998) (as with multiple murders, "the Legislature could reasonably determine that a particular sexual offense is more heinous because it is one of multiple acts against more than one victim").

In fashioning sentence reform for young adult offenders in the last several years, *see* Cal. Penal Code §§ 1170 and 3051, the California Legislature has chosen to except from the benefits of that reform those offenders whose LWOP sentences by their nature reflect the commission of particularly severe crimes. The California Legislature has determined that those young adult offenders who committed less severe crimes are more deserving of potential sentence relief, apparently believing that their less severe crimes suggest they are less likely to be incorrigible and more likely to return to society successfully.[4] The California Legislature also apparently has determined to exclude those offenders with LWOP sentences from any parole consideration to further the legitimate government purpose of protecting Californians from those individuals who have committed the most severe crimes. *Cf. Graham v. Florida*, 560 U.S. 48, 69 (2010) ("The Court has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers."); *id.* at 75 ("Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.")

Within the category of young adult offenders, the California Legislature has made a distinction between inmates with LWOP sentences and inmates with less than LWOP sentences.

---

[4] When, as here, rational-basis review applies, it is not necessary for the government to have articulated the specific reason for the classification it made; the classification will be upheld "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Ellsworth,* 456 F.3d at 1150 (emphasis in source) (quoting *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993)) (emphasis deleted).

Mr. Adams attacks the dividing line chosen by the California Legislature under Penal Code § 3051(b)(1)-(3) for sentencing relief for young adult offenders wherein LWOP inmates receive no sentencing relief while all others are eligible for potentially shorter sentences. But this is rationally related to a legitimate governmental goal of improving sentencing for young adult offenders. *See Foster v. Washington State Board of Prison Terms and Paroles*, 878 F.2d 1233, 1235 (9th Cir. 1989) ("Improvement in sentencing is [a] rational government purpose."). "[A] 'legislature must be allowed leeway to approach a perceived problem incrementally' without violating the Equal Protection Clause." *Ellsworth*, 456 F.3d at 1150 (rejecting equal protection challenge to Sentencing Guidelines' provisions that had different scienter requirements for enhancements for stolen firearms than for stolen explosives). Applying the relevant legal standard to his § 2254 petition, Mr. Adams has not identified any decision of the U.S. Supreme Court that clearly precludes a state legislature from treating more serious murders more harshly or that precludes a state legislature from offering sentencing breaks for some sentences while denying breaks for more severe sentences.

Mr. Adams also argues that his equal protection rights are violated because he is being treated differently from offenders who were juveniles (under 18 years of age) when the crime was committed; because he was over 18, he is not eligible for resentencing crime was under California Penal Code § 1170(d)(2). Similarly, he is not eligible for relief under Penal Code § 3051(b)(4). The distinction the California Legislature drew regarding LWOP sentences between juvenile offenders and adult offenders (including those who just turned 18) is rationally related to the legitimate governmental interest in treating juvenile offenders less harshly than adult offenders due to their immature and still-developing minds. Indeed, the distinction used by the California Legislature in § 1170(d)(2) and § 3051(b)(4) is the same distinction the U.S. Supreme Court drew between juveniles and adults (as discussed in more detail in the next section). That is, the U.S. Supreme Court held that the U.S. Constitution prohibits mandatory LWOP sentences for juveniles, *see Miller*, 567 U.S. 460 (2012); the California Legislature used the same juvenile/adult dividing line in providing parole eligibility only if the LWOP sentence was imposed for a crime committed as a juvenile. There was no equal protection violation. The fact that Mr. Adams was close in age

11

to that line does not render that line unconstitutional. Whenever a line is drawn, inevitably there will be individuals who fall closely on one side or the other.

Because the reasons for treating young adults sentenced to LWOP different from young adults sentenced to less than LWOP are rationally related to legitimate state interests, the different treatment does not violate Mr. Adams' right to equal protection. And because the reasons for treating juveniles sentenced to LWOP and adults sentenced to less than LWOP are rationally related to legitimate state interests, the different treatment does not violate Mr. Adams' right to equal protection. In reaching these same conclusions, the Sonoma County Superior Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254. Therefore, Mr. Adams is not entitled to the writ on his equal protection claim.

E. Cruel And Unusual Punishment Challenge

Mr. Adams contends that his LWOP sentence is impermissible under the Eighth Amendment's prohibition on cruel and unusual punishment. He contends that his Eighth Amendment rights are violated by California's failure to allow him a "'meaningful opportunity' to be paroled." Docket No. 1 at 5. He reasons that the amendments to California Penal Code § 3051 reflect the California Legislature's view that young adults (i.e., those under age 25) have the same juvenile mindset and criminal culpability as actual juveniles and therefore should be treated the same as actual juveniles for sentencing and parole opportunity purposes. *See* Docket No. 1 at 20, 22.

The U.S. Supreme Court issued three significant cases about the Eighth Amendment's prohibition on cruel and unusual punishment as it applies to juvenile offenders. In *Roper v. Simmons,* 543 U.S. 551, 578 (2005), the Supreme Court held that the Eighth Amendment forbids the "imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." In *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Supreme Court held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." In *Miller v. Alabama*, 567 U.S. 460, 465 (2012), the Supreme Court held that "mandatory life without parole [sentences] for those under the age of 18

12

at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Nothing in *Miller*, *Graham*, or *Roper* precludes an LWOP sentence for an adult offender, even a young adult offender who is 18.

Indeed, the Supreme Court recognized in *Roper* that a line had to be drawn for the special sentencing rules for young offenders, and chose to draw the line at age 18.

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in *Thompson[ v. Oklahoma*, 487 U.S. 815 (1988)] drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of Thompson extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

*Roper*, 543 U.S. at 574. Neither *Graham* nor *Miller* disturbed that dividing line. The Supreme Court cases thus mandate special consideration only for juvenile offenders (i.e., those offenders who committed their offenses while under age 18), and do not mandate special consideration of offenders who committed their offenses at age 18 or later.

Mr. Adams concedes that *Miller* accepted the age of 18 as a constitutional dividing line between juveniles and adults, but urges that *Miller* does not prohibit the states from raising that dividing line. Docket No. 1 at 13. He argues that California has done just that, and "recognizes the juvenile mindset that is present in 17 year olds is also prevalent in 22 year olds," (*e.g.*, § 3051(b)(1)-(3)) except those sentenced to LWOP or death (*e.g.*, § 3051(b)(4)). *See id.* at 13-14.

But the U.S. Supreme Court, in interpreting the Eighth Amendment, has not barred the state from approaching the issue of age and sentencing incrementally. California has drawn a distinction between those under 18 and those over 18 with respect to the most serious crimes for which are LWOP sentence has been imposed. As noted above, no Supreme Court case prohibits such line drawing.

Because Mr. Adams was not a juvenile at the time he committed his murders, the holdings

13

of *Roper*, *Graham* and *Miller* establishing a constitutional limit on sentencing do not apply to him. Regardless of California's treatment of young adult offenders, the U.S. Supreme Court has not determined that young adult offenders have a right to the same consideration as juvenile offenders for sentencing purposes. The decision of the California legislature in drawing some lines at 18 and others at 25 does not change the parameters of the Eighth Amendment.

Mr. Adams' Eighth Amendment rights must be analyzed under general Eighth Amendment jurisprudence. Under that general Eighth Amendment case law, his claim fails because the Eighth Amendment does not prohibit a life sentence for a person convicted of murder. "The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham*, 560 U.S. at 59. "For the most part, however, the [Supreme] Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime." *Id.* The Eighth Amendment contains a "narrow" proportionality principle – one that "does not require strict proportionality between crime and sentence," and forbids only "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 59-60. "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983); *see also Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012) ("Circumstances satisfying the gross disproportionality principle are rare and extreme, and constitutional violations on that ground are 'only for the extraordinary case'"). Only in that rare case where a comparison of the gravity of the offense and the severity of the sentence leads to an inference of gross disproportionality does a court compare a petitioner's sentence with sentences for other offenders in the jurisdiction and for the same crime in other jurisdictions to determine whether it is cruel and unusual punishment. *Graham*, 560 U.S. at 60. A sentence of life in prison for a special-circumstance murder does not lead to an inference of gross disproportionality and therefore does not amount to cruel and unusual punishment forbidden by the Eighth Amendment. *See United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir.1991) ("Under *Harmelin*, it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment"); *cf. Solem*, 463 U.S. at 290 n.15 (discussing earlier case in which it had found the death penalty to be excessive for felony murder in the circumstances of a particular case;

14

1  "clearly no sentence of imprisonment would be disproportionate" for the felony murder of an elderly couple). Lengthy sentences for crimes less serious than murder also have been upheld by the Supreme Court. *See e.g., Ewing v. California*, 538 U.S. 11, 29-31 (2003) (upholding sentence of 25-years-to-life for recidivist convicted most recently of grand theft); *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (upholding sentence of two consecutive terms of 25-years-to-life for recidivist convicted most recently of two counts of petty theft with a prior conviction); *Harmelin*, 501 U.S. at 996 (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine).

Mr. Adams' LWOP sentence for two special circumstance murders does not raise an inference of gross disproportionality, even if he must spend his entire life in prison on that sentence. His continued incarceration is lawful under the terms of his LWOP sentence imposed for a crime committed as an adult. *See United States v. McDougherty*, 920 F.2d 569, 576 (9th Cir.1990) (generally, "so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds").

For the reasons stated above, the Sonoma County Superior Court's rejection of Mr. Adams' Eighth Amendment claim was not contrary to or an unreasonable application of clearly established federal law, as set forth by the U.S. Supreme Court. The superior court reasonably determined that the exclusion of young adult offenders who had committed crimes serious enough to warrant an LWOP sentence from consideration of earlier parole was permissible under the Eighth Amendment; the exclusion "embodie[d] those principles set forth" in the U.S. Supreme Court's decision in *Miller*. Docket No. 2 at 138-39. The superior court's decision was not an unreasonable application of *Miller* or any other decision clearly establishing federal law. As noted above, *Miller*'s holding applied only to juvenile offenders; Mr. Adams was not a juvenile. Although the Court recognizes the harshness of the result, Mr. Adams is not entitled to the writ on this claim.

F.   No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: June 14, 2018

EDWARD M. CHEN
United States District Judge